INHABITANTS OF MONROE *versus* INHABITANTS OF JACKSON.

A person *non compos mentis* from infancy, and not emancipated, will follow the settlement of the father as well after he arrives of full age as before.

Such person cannot acquire an independent settlement by residence in a town for five successive years.

A transfer, by the father, of all his property to another, who, in consideration thereof, agreed to and did thereafter support the father and his family, does not constitute an emancipation of a member of the family who has been *non compos mentis* from birth.

ON REPORT.

ASSUMPSIT for supplies furnished a pauper who was *non compos mentis* from her birth. The only question was as to the settlement of the pauper.

The facts are sufficiently stated in the opinion.

*N. H. Hubbard*, for the plaintiffs, contended —

1. That a person *non compos mentis* may acquire a settlement in his own right, by residing in a town five successive years after he has arrived at the age of twenty-one years, without being emancipated; citing R. S., c. 24, § 1, clause 4; *Augusta* v. *Turner*, 24 Maine, 112; *New Vineyard* v. *Harpswell*, 33 Maine, 193; *Auburn* v. *Hebron*, 48 Maine, 322; R. S., c. 1, § 4, clause 8; *Corinth* v. *Bradley*, 51 Maine, 540.

2. That the father emancipated the pauper by transferring all his property to his son, who was to, and who did thereafterwards, support the whole family including the pauper.

*W. G. Crosby*, for the defendants.

BARROWS, J. — The only question is as to the settlement of Dorothy Jenness, a pauper, for whose support the plaintiffs have furnished supplies, for which they claim to recover in this action.

She was born July 8, 1817, is *non compos, a nativitate*, and the legitimate child of Francis Jenness, who, in March, 1847, with his family, then consisting of his wife, this daughter and a minor son, Charles, moved into Jackson and took up his abode with his son John, to whom he had previously conveyed what property he possessed, with the understanding that John was to support the family. The mother testifies that they all lived in the same house with John and his family, sometimes eating at the same table, and sometimes dividing their supplies and occupying different parts of the house; that John was " slim" for two or three years and did the business while her husband worked on the farm, doing as much as. John for the common support, and continuing able thus to work until twenty days before his death, which occurred in October,.1850. After that Dorothy continued to have her home there, in Jackson, with her mother, until March, 1854, John dying in the fall of 1853.

Hereupon, inasmuch as the pauper lived and had her home in the defendant town for more than five years successively,

after arriving at the age of twenty-one years, the plaintiffs contend that, whether emancipated or not, she gained a settlement in her own right by that residence, and furthermore, that the arrangement made by her father with John, for the support of the family, was in effect an emancipation, if that is necessary in order to make her gain a settlement.

We cannot so view it.

The wants and weakness of helpless and dependent children give them a rightful claim for protection and support upon the parent, who, in requital, has an unquestioned right to the custody and control of them, and to such services as they are capable of rendering, so long as this condition of things lasts. The law of nature, in this respect, has been recognized in the enactments and legal decisions of all civilized nations.

In our provisions for the support of the poor, care was taken, as far as possible, to prevent the separation of those between whom this reciprocal duty and obligation subsisted. The settlement of legitimate children was made to depend upon that of their father, when he had one within the State. And minor children, not emancipated, have been uniformly held incapable of acquiring in any mode a different settlement from him. *Frankfort* v. *New Vineyard*, 48 Maine, 565.

This condition of dependence, in ordinary cases, is considered as ceasing upon the arrival of the child at the age when the law decrees that he may be presumed capable of contracting for himself and administering his own affairs with reasonable discretion, and so he is to be deemed emancipated upon coming to the age of twenty-one years, unless by reason of mental imbecility he is compelled still to remain dependent upon the parent for guidance and support.

When this state of things occurs, an uninterrupted series of decisions has recognized both the rights and the duties of the parents as still continuing, and has made the settlement of the child dependent upon that of the father and liable to change only with his. *Upton* v. *Northbridge*, 15

Mass., 237; *Orford* v. *Rumney*, 3 N. H., 331; *Wiscasset* v. *Waldoborough*, 3 Maine, 388; *Tremont* v. *Mt. Desert*, 36 Maine, 390; *Gardiner* ·v. *Farmingdale*, 45 Maine, 537.

The reason for these decisions and their propriety are alike obvious. And cases like *Augusta* v. *Turner*, 24 Maine, 112; *New Vineyard* v. *Harpswell*, 33 Maine, 193; *Auburn* v. *Hebron*, 48 Maine, 322; *Corinth* v. *Bradley*, 51 Maine, 540, in which it is held that persons *non compos mentis*, but emancipated by the death or desertion of the parent, may gain a settlement in their own right by five years continuous residence, are not at all in conflict with this rule. A minor, who, while living with his parents, can have only a derivative settlement, *if emancipated*, may acquire a settlement in his own right in any mode provided in the settlement Acts applicable to persons under 21 years of age. *Lubec* v. *Eastport*, 3 Maine, 220.

But, while the condition of filial subjection and dependence and parental control and support continues to subsist, whether it arises out of the weakness and necessities of immature years, or out of mental infirmity protracted into what are called years of discretion, there is no emancipation and no possibility of separate settlements.

To harmonize with our own previous decisions on these questions of settlement, we must hold that a person, *non compos mentis* from infancy, and not emancipated, though more than twenty-one years of age, will follow the settlement of the father with whom she resides, and cannot acquire an independent settlement by residence in a town for five successive years. Up to Oct. 31, 1850, the date of her father's death, the settlement of Dorothy, if not emancipated, was that of her father, and not in Jackson. She continued to live in Jackson only until March, 1854, less than five years after her father's death. Repeated decisions have settled it that five years continuous residence of a person capable of acquiring a settlement *suo jure*, is necessary to establish a settlement in that mode, and that it is not competent for that purpose to add the time during which

the person has resided in the town in a subordinate and dependent position, to that which elapses after that condition is changed, to make up the required five years. *Richmond* v. *Lisbon*, 15 Maine, 434; *Thomaston* v. *St. George*, 17 Maine, 117.

The only remaining ground upon which the plaintiffs claim to be entitled to recover is, that the facts show an emancipation of the pauper by her father, in his lifetime, in which case her continuous residence of seven years in Jackson, would, as we have seen from the authorities above cited, gain for her a settlement there in her own right.

But there is nothing in the case from which such emancipation can be legitimately inferred. So long as the wants and necessities of the child tend to make him dependent upon the father, emancipation, being contrary to nature, is never to be presumed but must always be proved. *Sumner* v. *Sebec*, 3 Maine, 225.

And this is equally the case whether those wants and necessities are owing to the feebleness of infancy or to mental imbecility extending into mature years.

It occurs either by the act of God in depriving the child of his natural protector by death, or by the voluntary act of the parent surrendering the rights and renouncing the duties of his position, or, in some way, conducting in relation thereto in a manner which is inconsistent with any further performance of them. Poverty, even culminating in absolute pauperism of the parent, and resulting in a binding out to service of the child by the selectmen, until he is 21 years of age, does not effect it. *Fayette* v. *Leeds*, 10 Maine, 409 ; *Sanford* v. *Lebanon*, 31 Maine, 124 ; *Oldtown* v. *Falmouth*, 40 Maine, 106.

Neither does desertion of his home nor vagrancy of the child, unless assented to by the parent. *Bangor* v. *Readfield*, 32 Maine, 60.

That emancipation may be inferred from the acts of the parties, was settled in *Dennysville* v. *Trescott*, 30 Maine, 470. But we find no case in which the character of the acts

relied upon as evidence of emancipation resembles that of those in the case at bar. On the contrary, in *Wiscasset* v. *Waldoborough, ubi sup.,* the main facts of which are not unlike these, (though the question of emancipation and its effect was not raised or considered,) the Court held that the *non compos* child, of full age, took a derivative settlement from one gained by the father, while resident with him in the family of a brother to whom the father had conveyed his property, conditioned for the support of himself and his wife, during life, and the support of the *non compos* for a term of years. This was in effect holding that these facts did not constitute an emancipation, for an emancipated child does not follow the after-acquired settlement of his parent.

But, without relying upon precedent, it is plain that the attempt of Francis Jenness to make some sort of provision for the future comfort and support of those dependent upon him, by conveying his property to his son John, transferred not a particle of parental authority or control over Dorothy to her brother. It still remained for Francis Jenness and, after him, for his wife, and ultimately for Dorothy herself, to say how far she should make use of the means of support thus provided. The transaction gave John no claim to her services, nor right to insist upon her living with him or according to his direction.

So far as appears, until disabled by sickness, twenty days before he died, Francis Jenness, never intermitting his paternal cares, but laboring for the benefit and comfort of the united families, preserved his right to control the movements of Dorothy as he might think best for her interest and his own. While parental control and filial subordination concur, there can be no pretence of emancipation.

*Judgment for the defendants.*

APPLETON, C. J., CUTTING, KENT, DANFORTH and TAP- LEY, JJ., concurred.